16-1147-cv
Martinez v. City of New York

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of March, two thousand seventeen.

PRESENT: REENA RAGGI,
DENNY CHIN,
SUSAN L. CARNEY,
     *Circuit Judges*.

-----------------------------------------------------------------------

CHARLES MARTINEZ,
     *Plaintiff-Appellant*,

v.                                                                    No. 16-1147-cv

THE CITY OF NEW YORK,
     *Defendant-Appellee*.

-----------------------------------------------------------------------

APPEARING FOR APPELLANT:    ANDREW V. BUCHSBAUM (Bernard D. Friedman, *on the brief*), Friedman, James & Buchsbaum LLP, New York, New York.

APPEARING FOR APPELLEE:    SUSAN PAULSON, Assistant Corporation Counsel (Claude S. Patton, Assistant Corporation Counsel, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, New York.

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the May 12, 2016 judgment of the district court is AFFIRMED in part, VACATED in part and REMANDED.

Plaintiff Charles Martinez, a marine oiler injured in the course of his employment aboard the Staten Island Ferry, appeals from an award of summary judgment to the City of New York (the "City") on Martinez's claims of unseaworthiness and negligence, the latter under the Jones Act, *see* 46 U.S.C. § 30104. We review an award of summary judgment *de novo*, resolving all ambiguities and drawing all inferences in favor of the non-movant, and we will affirm only if the record reveals no genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Matthews v. City of New York*, 779 F.3d 167, 171–72 (2d Cir. 2015). We may, however, affirm on any ground supported by the record, whether or not relied upon by the district court. *See Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016).

To prove negligence under the Jones Act, a plaintiff must establish that there was (1) a dangerous condition on the ship, (2) of which defendant had notice, that (3) proximately caused the plaintiff's injuries. *See Diebold v. Moore McCormack Bulk Transp. Lines, Inc.*, 805 F.2d 55, 58 (2d Cir. 1986). To prove the distinct claim of unseaworthiness under general maritime law, a plaintiff must show that a vessel is "insufficiently or defectively equipped." *Oxley v. City of New York*, 923 F.2d 22, 25 (2d Cir. 1991) (internal quotation marks omitted). Seaworthiness does not demand an

2

accident-free ship, only one reasonably fit to be at sea. *See Lewis v. Lewis & Clark Marine, Inc*., 531 U.S. 438, 441 (2001); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). But where a condition renders a ship unseaworthy, liability attaches without regard to negligence or notice. *See Martinez v. United States*, 705 F.2d 658, 660 (2d Cir. 1983).

In applying these standards here, we assume the parties' familiarity with the underlying facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm in part and to vacate in part.

1.      Steering Compartment Floor

Martinez argues that he fell when climbing a ladder from the below-deck steering compartment to the main deck because (1) the steering compartment floor was covered with oil and grease, which got on the soles of his shoes, causing him to slip; and (2) the ladder between the steering compartment and the main deck lacked a handhold above the top rung. In support, Martinez relied on his own sworn affidavit stating that a "thick, shiny coating of black oil and grease covered the entire steering compartment deck" on the day of his accident, as well as three photographs depicting containers in the compartment that collected grease and oil. J.A. 148–49. Earlier, at his deposition, Martinez had also testified that there was "oil on the deck" and "all over the place" on the date of his accident. J.A. 44. Moreover, he described the condition as chronic despite his complaint to City port engineers.

The district court concluded that the deposition testimony and affidavit were insufficient to raise a triable issue of fact as to an unseaworthy condition in the absence of

3

"independent[] corroborat[ion]," which the court found in neither the proffered photographs nor Martinez's expert report. J.A. 261. Our precedent is to the contrary. *See, e.g.*, *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998) (rejecting argument that "self-serving affidavits" cannot defeat summary judgment). To be sure, other record evidence casts doubt on Martinez's claim that the oil and grease rose to the level of unseaworthiness. *See Rice v. Atl. Gulf & Pac. Co.*, 484 F.2d 1318, 1321 (2d Cir. 1973) ("A seaman is not entitled to a deck or ladder that is free of all oil or grease."). For example, Martinez, whose duties included emptying oil and grease containers and cleaning the deck with available grease-cutting solvents, performed those duties immediately before climbing the ladder without slipping. But decisions about whether to credit and how to weigh conflicting evidence are generally left to the jury. *See Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). Our task here is not to assess the strength of Martinez's unseaworthiness claim regarding the compartment floor or the likelihood of his prevailing. We conclude only that when we assume, as we must, that a jury fully credits Martinez's affidavit and testimony and draws all inferences favorable to him, it cannot be said as a matter of law that the jury could not find the condition of the steering compartment floor to have rendered it "no longer reasonably fit for its intended use by the crew." *Rice v. Atl. Gulf & Pac. Co.*, 484 F.2d at 1321.

Martinez's own responsibility to clear the steering compartment of accumulated oil and grease warrants no different conclusion. *See Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498 (1971) (accepting as "settled" that "shipowner is liable though the unseaworthiness be transitory"); *Schell v. Chesapeake & Ohio Ry. Co.*, 395 F.2d 676,

4

678 (4th Cir. 1968) ("That plaintiff was sent for the purpose of cleaning up grease or oil from the platform to which the ladder reached does not alter plaintiff's right to recover."). As the district court recognized, the record does not expressly identify what "untaken measures" the City might have employed to ensure the seaworthiness of the compartment floor, J.A. 262, but on summary judgment review, we must assume the jury will resolve this question favorably to Martinez, particularly in light of his affidavit statement that the containers collecting oil and grease regularly overflowed.

The same conclusion obtains as to Martinez's related Jones Act claim. The City acknowledges that his affidavit provides evidence that he notified City port engineers about accumulating oil and grease in the steering compartment. It nevertheless asserts that Martinez cannot establish its "fail[ure] to use due care" in light of undisputed evidence of City measures to guard against accidents, notably, installing containers and pads to collect oil and grease, requiring employees to keep the compartment floor clean, and providing them with cleaning supplies. Appellee's Br. 28–29. Whether Martinez's notice and the City's actions were sufficient, however, are questions that cannot be resolved as a matter of law on the instant record. *See Diebold v. Moore McCormack Bulk Transp. Lines, Inc.*, 805 F.2d at 58 (observing that "low and liberal" Jones Act *prima facie* standard "works in favor of submission of issues to the jury").

Accordingly, we vacate the award of summary judgment on Martinez's seaworthiness and Jones Act claims pertaining to the condition of the steering compartment floor.

2.    Ladder Condition

To support his ladder-condition claims, Martinez relies on his deposition testimony and affidavit, as well as an expert report.   That report acknowledges that the ferry boat at issue complied with applicable industry and regulatory requirements at its launch in 1965, but states that industry and U.S. Coast Guard standards have since been revised to recommend "handrails or handgrabs above the top of the ladder within easy reach," J.A. 106, and that the City's failure to bring the ferry boat here up to these recommended standards, which now reflect "industry custom and practice," manifests an unseaworthy condition, *id.* at 107.   The City, for its part, produced evidence that the ferry consistently passed the Coast Guard's quarterly inspections, including those conducted in 2013, the year of Martinez's accident.   It also submitted an expert report stating, *inter alia*, that the open hatch cover and four-inch-high lip (or "coaming") surrounding the hatch afforded handholds at the top of the ladder sufficient to assure reasonable safety and seaworthiness.

On this record, and in the absence of any evidence of ladder accidents since the ferry boat's 1965 launch, the district court concluded that Martinez's unseaworthiness claim failed as a matter of law.   We agree that a 50-year history of ladder use without injury makes it difficult for Martinez to prove unseaworthiness.   But we cannot conclude that the claim fails as a matter of law.   Whether the coaming and hatch cover provided adequate support for an adult of Martinez's height and build, so as to obviate the need for handholds, was vigorously disputed by the parties and their experts.   Were the jury to credit Martinez's expert as to both the insufficiency of the afforded handholds

6

and the industry custom to install dedicated handholds, it could find that the ladder was not reasonably safe. *See Fischl v. Armitage*, 128 F.3d at 55 (observing that assessments of credibility, choosing between "conflicting versions of the events," and "the weighing of evidence are matters for the jury, not for the court"); *see also Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 79 (2d Cir. 2002) ("Where, as here, there are conflicting expert reports presented, courts are wary of granting summary judgment." (alteration and internal quotation marks omitted)).

The City argues that, even if Martinez is allowed to pursue an unseaworthiness claim as to the ladder, his Jones Act claim necessarily fails for lack of notice. *See Diebold v. Moore McCormack Bulk Transp. Lines, Inc.*, 805 F.2d at 58 (stating notice of dangerous condition and "reasonabl[e] anticipat[ion]" of injury are necessary elements of Jones Act claim). In fact, Martinez adduced no evidence that either he or the City regarded the ladder's lack of handholds as dangerous before the accident at issue, much less that Martinez or anyone else alerted the City to such danger. Rather, the record suggests that the City believed the ladder to be safe in light of the absence of any documented accidents involving the ladder and the ferry's consistent passage of quarterly Coast Guard inspections. Because the record cannot support an inference that the City "reasonably anticipated the plaintiff might be injured by" the lack of handholds, Martinez cannot demonstrate that City negligence caused his injury. *See id.* Accordingly, we affirm the district court's award of summary judgment on Martinez's Jones Act claim pertaining to the ladder.

3.    Conclusion

We have considered the parties' remaining arguments and conclude that they are without merit.    Accordingly, the May 12, 2016 judgment of the district court is AFFIRMED as to Martinez's Jones Act claims regarding the ladder and otherwise VACATED and REMANDED for further proceedings.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court